UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT WATSON AND MARIA WATSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-1312** |
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ET AL.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that National Union Fire Insurance Company of Pittsburgh, PA and American International Group, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #60) is **GRANTED**, and plaintiffs' claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that Alliant Insurance Services, Inc. and Alliant Services Houston, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #64) is **GRANTED**, and plaintiffs' claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that Virginia Surety Company, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #62) is **GRANTED**, and plaintiffs' claims against it are **DISMISSED**.

**IT IS FURTHER ORDERED** that Catamaran Health Solutions, LLC and Catalyst Health Solutions, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #67) is **GRANTED** as to plaintiffs' claims of unfair trade practices, breach of the duty of good faith and fair dealing, conversion, and civil conspiracy. The motion is **DENIED** as to plaintiffs' unjust enrichment claim.[1]

### BACKGROUND

---

[1] HealthExtras, LLC has a pending Motion to Dismiss Plaintiffs' Complaint (Doc. #46) and a pending Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #65). Plaintiffs' claims against HealthExtras are stayed due to HealthExtra's pending bankruptcy proceedings.

This matter is before the court on motions to dismiss plaintiffs' first amended complaint filed by defendants, National Union Fire Insurance Company of Pittsburgh, PA, American International Group, Inc., Catalyst Health Solutions, Inc., Catamaran Health Solutions, LLC, Alliant Insurance Services, Inc., Alliant Services Houston, Inc. and Virginia Surety Company, Inc.

Plaintiffs, Robert and Maria Watson, filed this putative class action on behalf of themselves and similarly situated Louisiana residents, alleging that defendants are liable to them under theories of unjust enrichment; breach of the duty of good faith and fair dealing; unfair trade practices; conversion; and, civil conspiracy, for their involvement in the sale of a disability and out-of-area emergency insurance policy. Plaintiffs seek to represent a class consisting of: "All individual persons in the State of Louisiana who own, owned and/or purchased disability insurance coverage and/or paid premiums for disability insurance known as HealthExtras with Defendants from 1999 through the date of class certification."

Plaintiffs allege that in 1997, Catamaran, formerly known as Catalyst, and before that known as HealthExtras (collectively, "Catamaran"), developed a disability insurance scheme whereby it sold disability insurance that had a $1,000,000 Accidental Permanent and Total Disability Benefit, and a $2,500 Out of Area Emergency Accident and Sickness Medical Expense Benefit (the "Group Disability Policy"). The policy premium was $9.25 per month for an individual, or $14.50 per month, if the individual added his or her spouse. Catamaran advertised the policy by contracting with credit-card-issuing banks to include a brochure and application in their customers' monthly credit card bills. Consumers who filled out the application and purchased the insurance were designated as "members" of "a fictitious group Trust, which the Defendants own and control, which

2

is called the 'AIG Group Insurance Trust, for the Account of HealthExtras'." The participants' insurance premiums were collected as debits on their credit cards.

Plaintiffs allege that Catamaran entered into contracts with various licensed insurance carriers to apply for approval of the Group Disability Policy with each state's insurance department and to underwrite the disability benefits. They claim that the Accidental Permanent and Total Disability Benefit was at first underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, and after January 1, 2005, National Union. From 2001 to the present, Virginia Surety has underwritten the Out of Area Emergency Accident and Sickness Medical Expense Benefit.

Plaintiffs also allege that because Catamaran "was not a licensed insurance broker in any State, it fraudulently paid for the use of the name, The Sklover Group, Inc., which was a licensed broker and the corporate predecessor to JLT Services Corporation, which is now known as . . . Alliant Services Houston Inc.," and that "the name Alliant Services Houston Inc. has been used by [Catamaran] on correspondence and other documents to create the illusion that [Catamaran] is a valid insurance broker."

In 1999, the Watsons received Catamaran's marketing materials, and purchased the Group Disability Policy with an initial annual premium of $165 that was debited from their credit card. In 2005, the annual premium was increased to $247, and in 2009, it was increased to $319. Plaintiffs allege that the premium increases were illegal because they were enacted without prior approval by the Louisiana Department of Insurance. The Watsons continuously paid the premiums from 1999 until the policies were discontinued on January 1, 2015.

Plaintiffs allege that the insurance program was illegal and defendants purposefully circumvented Louisiana insurance law. According to plaintiffs, Louisiana law requires blanket group disability policies "to be sold only to an employer, or a group which has been otherwise organized and is maintained in good faith for purposes other than that of obtaining insurance." The group "may not be controlled by the insurer and the policy must be issued to a group or association which shall be deemed the policyholder." The group, which has an insurable interest in its members, can "scrutinize the terms of coverage and price of coverage to ensure that its members are receiving a good insurance product for a fair price." Plaintiffs claim that "Catamara, f/k/a Catalyst f/k/a HealthExtras Inc. and its incorporators gained an unfair advantage in the disability insurance market by unilaterally creating their own fictitious 'group' and directly marketing an illusory disability policy to individual consumers[.]"

Plaintiffs allege that National Union "either misrepresented to the state insurance regulators that the Group Disability Policy was intended to be issued to a valid group under state law or simply failed to apply for approval of the Group Disability Policy." Plaintiffs claim that neither the insurance policy form, C11695DBG, nor the master policy, SRG 95405189, was approved by the Louisiana Department of Insurance "for sale to any eligible groups in Louisiana."[2] Further, plaintiffs allege that the disability insurance was "illusory" because "policy series C11695DBG is replete with extremely harsh, restrictive and confusing exclusions and contradictory terms and definitions which intentionally renders the policy virtually worthless to purchasers." Plaintiffs also claim that very

---

[2] Plaintiffs have conceded that National Union did submit policy form C11695DBG to the Louisiana Commissioner of Insurance for approval and that it was approved for sale to "banks and other similar financial institutions." However, plaintiffs maintain that the approved group was improper under Louisiana law or that the policy was not actually sold to "banks and other similar financial institutions," but rather, directly to consumers.

little of the premium went to the insurance underwriters, and "there was no intent on behalf of the underwriters to pay claims." Plaintiffs allege that if they had made a claim under the disability policy it would have been denied, and cite two examples of insureds who became disabled and whose claims were denied. Plaintiffs never claim that they sought and were denied benefits under the policy. Indeed, their proposed class excludes "[a]ctual identifiable claims for disability benefits that have already arisen that may be payable under the terms of said disability insurance policies." Plaintiffs claim that their damages include:

> (1) paying for an insurance product sold to them through an illegal scheme, where 80% of the premium was collected by [Catamaran], and represented no benefit to them at all;
>
> (2) their credit card and bank accounts were debited for an increased amount they did not authorize and was not authorized under Louisiana law and therefore had their personal property taken from them which constitutes illegal conversion of personal property;
>
> (3) paying for an insurance product sold to them through an illegal scheme, where the underwriters had no intent to pay claims and was therefore virtually worthless; and,
>
> (4) paying a premium for an insurance product that was illegal under Louisiana law.

The defendants filed motions to dismiss arguing that plaintiffs have not stated claims against them under Louisiana law. The defendants all adopt one another's broad arguments.[3]

---

[3] Plaintiffs' counsel has brought similar suits in other jurisdictions. Five of these courts have ruled on motions to dismiss that were similar to the ones filed by defendants in the case at bar. In Bush v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, - - - F.Supp.3d - - -, 2015 WL 5042874 (E.D.N.C. 5/22/2015) (also known as Petruzzo), and Waiserman v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 14-667 (C.D.Ca. 10/24/2014), applying North Carolina and California law, respectively, the courts granted the motions to dismiss, finding that the plaintiffs did not allege an injury-in-fact sufficient to establish standing because the insurance policies were enforceable and plaintiffs never made a claim for benefits under the policies. Similarly, in Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2014 WL 4386463 (N.D.Ga. 9/4/2014), the court applied Georgia law and found that the insurance policies were enforceable. However, the court denied the motions to dismiss because the court could not determine as a matter of law from the face of the

## ANALYSIS

**A.     Legal Standards**

### 1.  Rule 12(b)(6) of the Federal Rules of Civil Procedure

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S.Ct. at 1965.  The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008).

---

pleadings whether "the plaintiffs suffered no harm because they got the insurance that they paid for and never made any claims for disability benefits." Id. In Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., - - - F.Supp.3d - - -, 2015 WL 5449791 (D.D.C. 9/16/2015), applying the law of the District of Columbia, the court found that plaintiff did not have standing to pursue claims based on the premise that the defendants would have denied her claim if she had made one under the policy, or that the policy was unenforceable due to violations of District of Columbia insurance laws because that law states that the policy shall be held valid. The court permitted claims based on the payment of higher premiums to go forward under theories of unjust enrichment, money had and received, and consumer protection laws. Id. In Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., - - - F.Supp.3d - - -, 2015 WL 1455239 (D.S.C. 3/31/2015), applying South Carolina law, the court denied the motions to dismiss finding that the plaintiffs may have suffered harm because they alleged that they were sold insurance policies that "fraudulently circumvented a provision of state law intended to protect consumers[.]"  The court stated that it was "uncomfortable concluding as a matter of law that the plaintiffs suffered no harm at this stage[,]" but cautioned the plaintiffs that "much more [than allegations] will be required for plaintiffs to survive a motion for summary judgment[.]"

In considering a motion to dismiss for failure to state a claim, the court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).  "The Court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 634 (5th Cir. 2014).

### B.  Unfair Trade Practices

Plaintiffs allege that defendants "sale and collection of premiums" for the insurance at issue "constitutes unfair and deceptive business practices in violation of La. Rev. Stat. 22:1964, *et seq.*". Specifically, plaintiffs allege that the defendants' conduct constitutes an unfair trade practice because:

> the HealthExtras policy was sold as a blanket policy to a group of persons that do not constitute a lawful blanket group.  Moreover, Defendants' conduct in selling the policy and collecting premiums violates state statutes and regulations because, *inter alia,* Defendants failed to obtain the proper approvals from the Department of Insurance prior to selling the policies and/or collecting premiums and/or raising the premium rates.  Furthermore, this conduct constitutes an unconscionable commercial practice because Defendants knowingly violated these statutes and regulations in order to avoid the scrutiny and oversight that would have come from regulators and a lawful group of policyholders.

Plaintiffs allege that "[d]efendants' omissions . . . were unfair and had the tendency to deceive by . . .:"

> (a) Failing to warn potential customers that the policy was not being sold to a lawful group in violation of Louisiana law;
>
> (b) Failing to obtain the proper approvals from the Louisiana Department of Insurance in violation of Louisiana law; and,

> (c) Disguising the fact that the policy has no value to the actual persons who were paying and are paying the premiums.

Plaintiffs claim that:

> they would not have purchased and paid premiums for Defendants' policy had they known: (a) the policy was not approved for sale as a blanket policy under Louisiana law; (b) the Master Policy contained extremely restrictive terms, exclusions and definitions of disability which rendered the policy virtually worthless; and (c) Defendants had not obtained the proper state regulatory approvals prior to marketing and selling the policy.

Defendants argue that plaintiffs cannot maintain unfair trade practices claims because the Louisiana Unfair Trade Practices Act ("LUTPA"), Louisiana Revised Statutes § 51:1401, *et seq.*, does not apply to actions subject to the jurisdiction of the Louisiana Commissioner of Insurance.

Plaintiffs allege that their unfair trade practices claim arises under La. Rev. Stat. § 22:1964, *et seq.*, not LUTPA. Part IV of Chapter 7 of the Louisiana Insurance Code (Title 22) regulates Unfair Trade Practices in the insurance industry. La. Rev. Stat. § 22:1961, *et seq.* Section 22:1961 provides that Part IV was enacted "to regulate the trade practices in the business of insurance, . . ., by defining and providing for the determination of all acts, methods, and practices which constitute unfair methods of competition and unfair or deceptive acts and practices in [Louisiana], and to prohibit the same." Id. at § 22:1961. Under § 22:1963, it is unlawful for a person to engage in any trade practice that is defined by Part IV to be "an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance." Id. at § 22:1963. The acts that "are declared to be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance" include:

> (1) Misrepresentations and false advertising of insurance policies. Making, issuing, circulating, or causing to be made, issued, or

8

> circulated any estimate, illustration, circular or statement, sales presentation, omission, or comparison that does any of the following:
>
> > (a) Misrepresents the benefits, advantages, conditions, or terms of any policy issued or to be issued.
>
> > \* \* \*
>
> > (f) Uses any name or title of any policy or class of policies misrepresenting the true nature thereof.
>
> > \* \* \*
>
> > (2) False information and advertising generally. Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading.

Id. at § 22:1964.

Under § 22:1967, only the Louisiana Commissioner of Insurance is empowered to enforce Part IV. Section 22:1967 provides that the:

> commissioner of insurance shall have power to examine and investigate the affairs of every person engaged in the business of insurance, including violations of R.S. 22:1902 *et seq.*, in order to determine whether such person has been engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this Part.

Id. at § 22:1967. "[N]o provision of this statutory scheme . . . creates a cause of action in favor of a person allegedly injured by unfair trade practices in the insurance business." Klein v. Am. Life & Cas. Co., 858 So.2d 527, 533 (La. Ct. App. 2003); see also Theriot v. Midland Risk Ins. Co., 694 So.2d 184, 190-93 (La. 1997) (explaining that only the Louisiana Commissioner of Insurance is

empowered to examine, investigate and hold hearings regarding suspected unfair trade practices in insurance unless the Louisiana Legislature specifically provides a private right of action). Thus, plaintiffs cannot bring an action for unfair trade practices under La. Rev. Stat. § 22:1964, *et seq.* Defendants' motions to dismiss are GRANTED as to plaintiffs' unfair trade practices claims, and such claims are DISMISSED.

C.     **Breach of Duty of Good Faith and Fair Dealing**

Plaintiffs allege that the defendants "individually and collectively created a fiduciary relationship" and "entered into a contract with" them by creating the "AIG Insurance Trust, for the Account of HealthExtras," and placing plaintiffs in that group. Plaintiffs claim that the defendants "breached the general duty of good faith and fair dealing . . . and the specified duty of good faith identified in La. Rev. Stat. § 22:1973" by selling "illegal insurance coverage" to plaintiffs. More specifically, plaintiffs allege that "[b]y illegally selling the policy to a group that was not and could not be a legal blanket group, the Defendants have breached their duty of good faith and fair dealing with the Plaintiffs[.]"

   **1. Implied Covenant of Good Faith and Fair Dealing**

"Good faith performance is an implied requirement of every contract under Louisiana law." Grisaffi v. Dillard Dep't Stores, Inc., 43 F.3d 982, 983 (5th Cir. 1995) (citing La. Civ. Code art. 1983). A claim for breach of this implied covenant of good faith and fair dealing is based on the existence of an underlying contract. See La. Civ. Code. art 1983. Further, "[a] breach of the duty of good faith and fair dealing requires a breach of contract." Schaumburg v. State Farm Mut. Auto. Ins. Co., 421 Fed. Appx. 434, 439 (5th Cir. 2011).

The insurance policy is the contract at issue in this case. "A policy of insurance is a contract between the [i]nsured and the [i]nsurer and has the effect of law on the parties." Fontenot v. New York Life Ins. Co., 357 So.2d 1185, 1187 (La. Ct. App. 1978). The insurers were National Union, a division of AIG, which underwrote the accident Accidental Permanent and Total Disability Benefit, and Virginia Surety, which underwrote the Out of Area Emergency Accident and Sickness Medical Expense Benefit. In 2004, HealthExtras sent plaintiffs information regarding their insurance policy. Attached to that correspondence was a summary of the plan benefits. The section related to the Accidental Permanent and Total Disability Benefit clearly stated that it was "Underwritten by: National Union Fire Insurance Company of Pittsburgh, Pa. a division of American International Group, Inc. (AIG)." Similarly, the section related to the Out of Area Emergency Accident and Sickness Medical Expense Benefit" stated that it was "ISSUED BY Virginia Surety Company, Inc." None of the other defendants were parties to the insurance contract. Thus, there can be no claim for the breach of the duty of good faith and fair dealing against Catalyst, Catamaran, Alliant Insurance Services, or Alliant Services Houston and their motions to dismiss are GRANTED as to breach of the duty of good faith and fair dealing claims, and those claims are DISMISSED.[4]

Further, there is no allegation that either National Union, a division of AIG, or Virginia Surety breached their respective insurance contracts with plaintiffs. Indeed, plaintiffs specify in their complaint that they have not made any claims for covered losses under the insurance policy

---

[4] In Daugherty v. Am. Express Co., 485 Fed. Appx. 746 (6th Cir. 2012), the plaintiff made a claim for benefits under the HealthExtras disability insurance program. Applying Kentucky law, which provides that an insurance policy is a contract between the insurer and the insured, the court held that the parties to the contract were the plaintiff and the insurer. Id. at 748. Thus, plaintiff could not bring breach of contract or bad faith claims against HealthExtras. Id.

11

and exclude from the class all persons who have. Therefore, plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing against National Union, AIG or Virginia Surety, and their motions to dismiss are GRANTED as to breach of the implied covenant of duty of good faith and fair dealing claims, and those claims are DISMISSED.

### 2. La. Rev. Stat. § 22:1973

Plaintiffs contend that defendants are liable for breaching the duty of good faith and fair dealing codified in La. Rev. Stat. § 22:1973, which states that "[a]n insurer, . . ., owes to his insured a duty of good faith and fair dealing[,]" and is "liable for any damages sustained as a result of the breach" of that duty. La. Rev. Stat. § 22:1973(A). The statue enumerates actions that constitute a breach of the duty of good faith and fair dealing if knowingly committed by the insurer. Id. at § 22:1973(B). However, subparagraph D states that the statute is inapplicable to claims made under health and accident insurance policies, such as the policy at issue in this case. Therefore, La. Rev. Stat. § 22:1973 is inapplicable. Defendants' motions to dismiss are GRANTED as to plaintiff breach of the duty of good faith and fair dealing under La. Rev. Stat. § 22:1973, and those claims are DISMISSED.

### D.     Unjust Enrichment

Plaintiffs allege that all of the defendants were unjustly enriched by plaintiffs' payment of premiums for what plaintiffs allege is "an illegal policy that could never be approved by the Louisiana Department of Insurance or lawfully sold to Louisiana residents" because "Plaintiffs and the Class Members were not members of a legal "blanket group.'" Plaintiffs also allege that Catalyst and Catamaran were unjustly enriched because only $2.24 of the $15.95 monthly premium was paid to National Union, and the remainder did not pay "for anything that would benefit the [plaintiffs]",

but rather was retained by Catalyst, Catamaran and HealthExtras "to further the illegal HealthExtras Scheme[.]"

Defendants argue that plaintiffs cannot plead an unjust enrichment claim in the alternative to their breach of the duty of good faith and fair dealing claim. National Union, AIG, Virginia Surety, argue that they were not unjustly enriched because plaintiffs received the insurance coverage they paid for, and that if plaintiffs had made a covered claim during the policy period, the insurers would have been obligated to pay those claims. Also, Alliant Insurance Services and Alliant Services Houston argue that plaintiffs have not alleged that these entities received any of the insurance premium, so they could not have been unjustly enriched.

Louisiana Civil Code article 2298, codifies the Louisiana doctrine of unjust enrichment:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The elements of an unjust enrichment claim are: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law available to the plaintiff. Baker v. Maclay Prop. Co., 648 So. 2d 888, 897 (La. 1995). "[O]nly the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication." Carriere v. Bank of La., 702 So.2d 648, 671-72 (La. 1996) (quoting Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116, 122 (La. 1974)).

Article 2298 specifies that unjust enrichment is "subsidiary in nature," and the "remedy is only applicable to fill a gap in the law where no express remedy is provided." Walters v. MedSouth Record Mgmt. LLC, 38 So.3d 243, 244 (La. 2010) (quotation omitted). "The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." Id.

### 1. National Union, AIG and Virginia Surety

Plaintiffs have not alleged a claim for unjust enrichment against National Union, AIG or Virginia Surety. There was a justification for the enrichment because the insurers would have been obligated to pay any covered claims that plaintiffs made during the policy period if plaintiffs had made such claims. In 2004, HealthExtras sent plaintiffs information regarding their insurance policy which explained the coverages provided by National Union, a division of AIG, and Virginia Surety. Further, plaintiffs potentially had another remedy available at law, because, if the plaintiffs had made a claim for a covered event and the insurers failed to pay it, plaintiffs would have had a breach of contract action against the insurers. As a result, National Union's, AIG's and Virginia Surety's motions to dismiss are GRANTED as to plaintiffs' unjust enrichment claims, and those claims are DISMISSED.

### 2. Alliant Insurance Services and Alliant Services Houston

Plaintiffs have not alleged an unjust enrichment claim against Alliant Insurance Services or Alliant Services Houston because they did not allege any enrichment to either entity. Plaintiffs allege that the insurers received a small portion of the premium and the rest was retained by Catalyst, Catamaran and HealthExtras. There is no allegation of any enrichment to Alliant Insurance Services' or Alliant Services Houston. Therefore, Alliant Insurance Services' and Alliant Services

14

Houston's motions to dismiss are GRANTED as to plaintiffs' unjust enrichment claims, and those claims are DISMISSED.

### 3. Catalyst and Catamaran

Plaintiffs have stated unjust enrichment claims against Catalyst and Catamaran. Plaintiffs allege that these defendants, along with HealthExtras, were enriched by receiving 80% of the insurance premiums and that plaintiffs were impoverished by this without justification because that payment provided no benefit to plaintiffs. Further, plaintiffs have no other remedy at law available to redress this harm. Plaintiffs did not have a contract with these defendants, nor do they have a remedy under tort law of conversion. Therefore, Catalyst's and Catamaran's motion to dismiss is DENIED as to plaintiffs' unjust enrichment claims.

### E. Conversion

Plaintiffs allege that the defendants committed the tort of conversion when they "unilaterally increased [the insurance] premiums without notice or regulatory approval and debited the credit card or bank accounts of the Plaintiffs and the putative Class Members for the increased amount." Defendants argue that plaintiffs cannot state a claim for conversion regarding the increased insurance premiums because they implicitly authorized the increased amount by failing to object to the increases and continuing to pay the increased premiums for years.

"Conversion is defined as an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently, or for an indefinite time." Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir. 1995). The tort of conversion is "the wrongful deprivation of a person of property to the possession of which he is entitled." Importsales, Inc. v. Lindeman, 92 So.2d 574, 575 (La. 1957).

15

In order to prevail on a claim of conversion under Louisiana law, the plaintiff must prove that: (1) he owned or had the right to possess funds that were misused by the defendant; (2) the misuse was inconsistent with the plaintiff's rights of ownership; and, (3) the misuse constituted a wrongful taking of the funds. Chrysler Credit Corp. v. Perry Chrysler Plymouth, 783 F.2d 480, 484 (5th Cir. 1986).  "However, when the owner gives another permission to take possession of his property he must terminate that permission by requesting return of the property before continued possession by the non-owner will constitute conversion." Sec. Home Mortg. Corp. v. Bogues, 519 So.2d 6307, 312 (La. Ct. App. 1988); see also Hampton v. Hibernia Nat. Bank, 598 So.2d 502, 504 (La. Ct. App. 1992); Miller v. Harvey, 408 So.2d 946, 952 (La. Ct. App. 1981).  Further:

> one who might otherwise be entitled to maintain an action for the conversion of his goods may afford the alleged wrongdoer a complete defense to the action by waiving the right to treat the act as wrongful, or by ratification thereof.  If the owner expressly or impliedly assents to or ratifies the taking, use or disposition of his property, he cannot recover for conversion of the property.  In other words, the right to sue in conversion may be defeated by an act or conduct which amounts to estoppel.

Aymond v. State of La., Dep't of Revenue and Taxation, 672 So.2d 273, 276 (La. Ct. App. 1996) (citations omitted).

In this case, plaintiffs implicitly gave defendants their permission to collect the increased insurance premiums by failing to object when the premiums were increased in 2005 and 2009, and by continuing to pay the increased premiums for years without questioning them.  Plaintiffs were informed of the increased insurance premiums on their credit card statements or bank statements, and they did not question these increases in either 2005 or 2009 when they occurred.  Instead, plaintiffs continued to pay the premiums, thereby ratifying the increases.  Thus, plaintiffs are

estopped from bringing conversion claims against the defendants. Defendants' motions to dismiss are GRANTED as to plaintiffs' conversion claims, and those claims are DISMISSED.

**F.     Civil Conspiracy**

Defendants argue that plaintiffs failed to properly plead a claim for civil conspiracy because they did not allege any facts demonstrating an agreement between the defendants to inflict any wrong, and the existence of a business relationship among the defendants is insufficient. Defendants also argue that plaintiffs did not assert any overt acts taken by any defendants in furtherance of the conspiracy. Further, defendants argue that civil conspiracy requires a valid underlying tort claim, which plaintiffs have not alleged. Plaintiffs cite allegations in the complaint which they argue demonstrate that conspiracy is adequately alleged.

"Conspiracy by itself is not an actionable claim under Louisiana law," and must be based on an underlying tort. Crutcher-Tufts Resources, Inc. v. Tufts, 38 So.3d 987, 991 (La. Ct. App. 2010) (citing Ross v. Conoco, Inc., 828 So.2d 546 (La. 2002)). Instead, conspiracy imposes solidary liability on the co-conspirators. Louisiana Civil Code article 2324 provides that a person "who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." Thus, the actionable element of the conspiracy claim is the "'tort [in] which the conspirators agree to perpetrate and which they actually commit in whole or in part.'" Crutcher-Tufts, 38 So.3d at 991(quoting Ross, 828 S.2d at 552). To recover under a conspiracy theory of solidary liability, "a plaintiff must prove that an agreement existed to commit an illegal or tortious act; the act was actually committed and resulted in plaintiff's injury; and there was an agreement as to the intended outcome or result." Id. (citing Butz v. Lynch, 710 So.2d 1171 (La. Ct. App. 1998)).

Plaintiffs base their civil conspiracy claim on the underlying torts of unfair trade practice violations and conversion. This court has determined that plaintiffs' have no cause of action for unfair trade practice and conversion. Therefore, plaintiffs cannot sustain a claim for civil conspiracy based on unfair trade practice violations and conversion. Defendants' motions to dismiss are GRANTED as to plaintiffs' civil conspiracy claims, and those claims are DISMISSED.

**G.     Sanctions under 28 U.S.C. § 1927**

VA Surety seeks payment of under 28 U.S.C. § 1927 of excess costs, expenses and fees incurred in preparing its motion to dismiss plaintiffs' first amended complaint. It argues that plaintiffs' national counsel filed the defective original complaint knowing that the defendants would raise the same arguments they have made in companion cases around the country, and then filed the first amended complaint after defendants filed motions to dismiss the original complaint, which necessitate the filing of motions to dismiss the first amended complaint. VA Surety argues that plaintiffs' national counsel is purposely prolonging the litigation and driving up the defendants' costs.

Title 28, United States Code, Section 1927, provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Because § 1927 is penal in nature, it is strictly construed. Vanderhoff v. Pacheco, 344 Fed. Appx. 22 (5th Cir. 2009) (citing Baulch v. Johns, 70 F.3d 813, 817 (5th Cir. 1995)). To impose sanctions against an attorney under § 1927, the court must find that the attorney "unreasonably" and "vexatiously" multiplied the proceedings. Id. (citing Proctor & Gamble Co. v. Amway Corp., 280

F.3d 519, 525 (5th Cir. 2002)). Such a finding requires evidence of the sanctioned attorney's recklessness, bad faith, or improper motive. Id. (citing Edwards v. Gen. Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998)).

No evidence has been presented that plaintiffs' counsel in this case was acting vexatiously, recklessly, in bad faith, or with an improper motive when they filed the first amended complaint in this case. Therefore, Virginia Surety's motion for sanctions under § 1927 is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that National Union Fire Insurance Company of Pittsburgh, PA and American International Group, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #60) is **GRANTED**, and plaintiffs' claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that Alliant Insurance Services, Inc. and Alliant Services Houston, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #64) is **GRANTED**, and plaintiffs' claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that Virginia Surety Company, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #62) is **GRANTED**, and plaintiffs' claims against it are **DISMISSED**.

**IT IS FURTHER ORDERED** that Catamaran Health Solutions, LLC and Catalyst Health Solutions, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #67) is **GRANTED** as to plaintiffs' claims of unfair trade practices, breach of the duty of good faith and fair dealing, conversion, and civil conspiracy. The motion is **DENIED** as to plaintiffs' unjust enrichment claim.

New Orleans, Louisiana, this 29th day of September, 2015.

**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**